958 So.2d 501 (2007)
CITICORP INVESTMENT SERVICES, INCORPORATED, a foreign corporation, and Luis Prieto, in his individual capacity, Appellants,
v.
Vilma MEDANIC, individually and Armida Medanic, individually, Appellees.
No. 3D06-2902.
District Court of Appeal of Florida, Third District.
May 30, 2007.
*502 Bressler, Amery & Ross, and Alex J. Sabo and Seth V. Alhadeff, Miramar, for appellant.
William L. Richey; Milton M. Ferrell, Jr., and Carlos A. Nunez-Vivas, Miami, and Lilly Ponce, for appellees.
Before FLETCHER, WELLS and SUAREZ, JJ.
WELLS, Judge.
Citicorp Investment Services, Inc. ("CIS") and Luis Prieto appeal an order denying their motion to stay this action pending arbitration pursuant to an arbitration clause contained in plaintiff/appellee Vilma Medanic's client agreement.[1] We reverse.
CIS is a securities broker-dealer and a member of the NASD. Luis Prieto is a former financial executive at CIS, whose responsibilities included recommending financial investments for CIS clients and conducting transactions with respect thereto on the clients' behalf. Appellee Vilma Medanic and her sister, Armida Medanic, had individual accounts at CIS with Prieto as their financial advisor at all times relevant to this appeal.
In early 2000, Prieto allegedly advised the Medanic sisters to invest in a fixed annuity offered by Sun Life Assurance Company of Canada, which would guarantee the return of 100% of their capital investment and a minimum 5% annual interest over a 7 year period. The sisters allegedly agreed to invest in the fixed annuity but ultimately ended up with variable Sun Life annuities, which lost considerable value due to market fluctuations. Consequently, on July 6, 2005, the Medanic sisters filed suit against CIS and Prieto, raising their own, separate claims for breach of fiduciary duty, violations of Florida's Blue Sky law, and constructive fraud. With respect to Vilma Medanic, the complaint alleged that Prieto had originally purchased a fixed annuity, but that "in August 2000, without authorization, Vilma's money was transferred from the 7-year guaranteed fund to variable investments in the Fund."[2]
CIS, citing to virtually identical arbitration clauses in the client agreements signed by both plaintiffs, moved to stay the underlying action pending arbitration.[3] The motion was granted as to Armida but denied as to Vilma because, according to *503 Vilma, under Citigroup, Inc. v. Amodio, 894 So.2d 296 (Fla. 4th DCA 2005), the sale of the fixed annuity purchased through her CIS account and the subsequent purchase of the variable annuity did not constitute transactions within the meaning of the arbitration clause. We disagree and reverse.
As we explained in Armida's companion case, the decision in Amodio, which involved the same arbitration clause as at issue here, turned on claims relating to the failure to engage in a transaction because of bad investment advice, rather than from a sale and subsequent purchase alleged, as here, to have been improper. See Medanic, 954 So.2d at 1213 (finding that "[w]hile in Amodio, the plaintiff's claim arose directly from the analysts' advice, here, Medanic's claims arise directly from the purchase of an investment product"). Amodio is simply inapposite.
Moreover, in light of Vilma's express grant of broad authority to CIS and Prieto to "to use [her] brokerage account to process orders to purchase fixed or variable annuities," the sale of the Sun Life fixed annuity initially purchased through Vilma's CIS account to purchase a Sun Life variable annuity (again purchased through that same CIS account) was a transaction that fell within the scope of the parties' arbitration clause irrespective of the account in which these annuities were held.
Accordingly, the order denying a stay pending arbitration is reversed.
NOTES
[1] The order on appeal also granted CIS' motion to stay this action as to co-plaintiff, Armida Medanic's claim. That portion of the order was affirmed by this Court in Medanic v. Citicorp Investment Services, 954 So.2d 1210 (Fla. 3d DCA 2007).
[2] With respect to Armida Medanic, the complaint alleged that Prieto never purchased a fixed annuity at all, but instead purchased the variable annuity. Medanic, 954 So.2d at 1211.
[3] The arbitration clause in Vilma's agreement, which is substantially the same as that in Armida's agreement, provides:

CIS and you agree that all controversies which may arise concerning any order or transaction, or the construction, performance or breach of this agreement, whether entered into prior to, on or subsequent to the date hereof, and including any margin transaction, shall be submitted to and determined by arbitration conducted pursuant to the then current Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Judgment upon any award rendered may be entered in any court having jurisdiction.
Vilma's client agreement also contains an "Annuities Transactions" provision, explaining:
You understand that you may be able to use your brokerage account to process orders to purchase fixed or variable annuities. If this service is provided, the Clearing Broker will prepare confirmations of any transaction placed through your brokerage account. . . .