# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**BANK OF AMERICA, N.A., MARK R. MALLER, BRIAN MORMILE, DOUGLAS DIVIRGILIO** and **FREDERICK PERRY,**
Appellants,

v.

**DON BEVERLY** and **DEAN KRETSCHMAR,**
Appellees.

Nos. 4D14-3167 and 4D14-3168

[June 10, 2015]

Consolidated appeals of non-final orders from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey E. Streitfeld, Judge; L.T. Case Nos. 14-006271 CACE 07 and 14-006251 CACE 07.

Gary M. Bagliebter and Rachel H. LeBlanc of Shutts & Bowen LLP, Fort Lauderdale, for appellant Frederick Perry.

Kim M. Watterson, Mary J. Hackett and Jarrod D. Shaw of Reed Smith LLP, Pittsburgh, PA, Richard C. Hutchinson and Katherine M. Joffe of Holland & Knight LLP, Fort Lauderdale, and William N. Shepherd of Holland & Knight LLP, West Palm Beach, for appellants Bank of America, N.A., Mark R. Maller, Brian Mormile, and Douglas DiVirgilio.

Harley S. Tropin, Thomas A. Tucker Ronzetti, Adam M. Moskowitz, Gail A. McQuilkin and Dyanne E. Feinberg of Kozyak Tropin Throckmorton, LLP, Coral Gables, and William R. Scherer of Conrad & Scherer, LLP, Fort Lauderdale, for appellees.

WARNER, J.

Bank of America appeals from orders denying its request for arbitration in two cases, which we have consolidated for purposes of this appeal. It claims that an arbitration provision in a loan agreement with its customer, who is the plaintiff-appellee in one case, should apply to all appellees in both cases, and the trial court erred in failing to order arbitration. We agree that the court should have ordered arbitration as to the signatories of the loan agreement, but we affirm the court's denial of arbitration as to the non-signatories of the agreement containing the arbitration clause.

These consolidated cases arise out of the Scott Rothstein Ponzi scheme. The plaintiffs in *Kretschmar v. Bank of America, N.A.* are Douglas Von Allmen and his affiliated companies and family members. The plaintiffs in *Beverly v. Bank of America* are individuals and entities who claim to have been injured as a result of the bank's conduct. The *Kretschmar* plaintiffs alleged that the bank induced Von Allmen, a bank customer, to invest in the Banyon Income Fund (a feeder fund for the Rothstein Ponzi scheme) without informing him of its assessment that Rothstein's investments were most likely fraudulent. The complaint alleged that, relying on information from Von Allmen, various members of Von Allmen's family also invested in the Rothstein Ponzi scheme. When the Ponzi scheme collapsed, Von Allmen, his affiliated corporations, and family members lost most of their investment.

The *Beverly* complaint was brought by plaintiffs who were not parties to the loan agreement and generally had no relationship with the bank. The complaint alleged that the bank's failure to properly advise Von Allmen regarding the fraudulent nature of Banyon caused Von Allmen to invest in Banyon, thus propping up Rothstein's Ponzi scheme and allowing Rothstein to continue his fraud and obtain monies from the seventy-eight plaintiffs in *Beverly*.[1] The plaintiffs also lost their investments.

Years before, Von Allmen and his corporation, D&L Partners, had entered into a loan agreement with the bank to construct a large yacht. That agreement included a very broad arbitration clause. In 2009, after Von Allmen and his family had already invested several million dollars in Banyon, Von Allmen borrowed more funds from the bank to add to this investment. The loan was memorialized in the Fifth Amendment to the prior loan agreement. The agreement also contained a nearly identical arbitration provision to the one in the original loan agreement. It included the following terms:

(a) This Dispute Resolution Provision concerns the resolution of *any* controversies or claims between the parties, *whether arising in contract, tort or by statute*, including *but not limited to* controversies or claims that arise out of or relate to: (i) this agreement . . . or (ii) any document related to this agreement (collectively a "Claim").

---

[1] Whether or not this set of facts even states a valid cause of action is not an issue before us.

(b) At the request of any party to this agreement, any Claim shall be resolved by binding arbitration . . . .

\*\*\*

(e) . . . Any dispute concerning this arbitration provision or whether a Claim is arbitrable shall be determined by the arbitrator(s) . . . .

After the plaintiffs filed suit, the bank moved to compel arbitration in both cases based upon the foregoing arbitration provision, claiming that the signatories to the agreement were bound by the arbitration provision, and the non-signatories should also be bound because their claims rest on allegations of the bank's breach of duty to Von Allmen. The court denied the motion, concluding that the causes of action did not have a significant relationship to the loan agreement containing the arbitration clause, relying on *Seifert v. United States Home Corp.*, 750 So. 2d 633 (Fla. 1999). In *Beverly*, the court also determined that the plaintiffs, as non-signatories, were not bound by the agreement to arbitrate. From these orders, the bank appeals.

An order denying a motion to compel arbitration is reviewed *de novo*. *Hospicecare of Se. Fla., Inc. v. Major*, 968 So. 2d 117, 118 (Fla. 4th DCA 2007); *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005). "Courts generally favor [arbitration] provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013).

Whether to compel arbitration requires a determination of three issues: 1) whether a valid arbitration agreement exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitration has been waived. *See Seifert*, 750 So. 2d at 636. This case involves solely the second issue.

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Where the agreement "clearly and unmistakably" provides for the arbitrator to determine the issue of arbitrability of a dispute, courts should enforce the agreement as written. *Mercedes Homes, Inc. v. Colon*, 966 So. 2d 10, 14 (Fla. 5th DCA 2007).

3

There is an express agreement in arbitration provisions in the loan agreements that the arbitrator shall determine the arbitrability of any claim. The scope of the arbitration provision in the agreement was very broad, broader than simply requiring the arbitration of claims involving the subject matter of the loan. The parties agreed to arbitrate *any* dispute between them, including *but not limited* to, disputes arising out of the loan agreements. They agreed to arbitrate those disputes, whether they arose in tort or in contract. And they expressly agreed that the arbitrator would determine the arbitrability of a claim. Both the original loan agreement and the Fifth Amendment to it also expressly provided that the Dispute Resolution Procedure was a "material inducement for the parties entering into this agreement." Based upon *Howsam*, the parties "clearly and unmistakably" agreed to submit the question of arbitrability to the arbitrator.

The bank is entitled to enforce the terms of the arbitration agreement. Thus, the court erred in determining arbitrability of the claims made by the signatories to the loan agreement, namely, Douglas Von Allmen and D&L Partners, LP. Arbitrability of a claim must be determined by the arbitrator.

The remainder of the plaintiffs in *Kretschmar* and all of the plaintiffs in *Beverly* are non-signatories to the agreement. The trial court correctly determined that none of them are bound by the arbitration provision in the loan agreement. "Given the principle that a party can be forced to arbitrate only those matters one has specifically agreed to arbitrate, courts should avoid engaging in interpretation of the agreements of other parties in order to require non-parties to arbitrate." *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 405 (Fla. 4th DCA 2004). The bank's reliance on cases involving derivative claims, third party beneficiary status, and equitable estoppel are all factually far off the mark from the allegations in this case as to the non-signatories, none of whose claims can be categorized as such.

As to the contention that the non-signatories' claims should be stayed while arbitration proceeds with respect to the signatories, the trial court did not rule on this, as it denied arbitration entirely. On remand, the trial court may consider whether to stay either action, although we note that principles of *res judicata* and *collateral estoppel* would not bind any of the non-signatories to any results of an arbitration proceeding, as there is no identity of parties. *See Accardi v. Hillsboro Shores Imp. Ass'n*, 944 So. 2d 1008, 1012 (Fla. 4th DCA 2005) (In order for res judicata to bar subsequent claims, four identities must be established: "(1) identity in the

thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made. . . . Collateral estoppel may be employed where two causes of action fail to meet the identity test [of res judicata], but the other identities are present, *i.e.*, identity of parties and issues.") (internal quotation marks and citations omitted).

We thus reverse the trial court's order denying arbitration in the *Kretschmar* case to the extent that it determined arbitrability of the claims of Von Allmen and D&L Partners, LP. Those claims should be submitted to the arbitrator, pursuant to the terms of the loan agreements. We affirm the denial of arbitration of the claims of the remaining *Kretschmar* plaintiffs. We also affirm the denial of arbitration in *Beverly*.

*Affirmed in part; reversed in part and remanded for further proceedings.*

GROSS and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

5